# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| KAIFI LLC,<br><br>    Plaintiff,<br>vs.<br><br>AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; and AMAZON WEB SERVICES, INC.,<br><br>    Defendants. | Case No. 2:24-cv-00542<br><br>JURY TRIAL DEMANDED |

## AMAZON'S MOTION FOR PROTECTIVE ORDER BARRING KAIFI'S PROPOSED EXPERT CHOWDHARY FROM RECEIVING AMAZON'S CONFIDENTIAL INFORMATION

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

    A. The Amazon Technology At Issue .............................................................2

    B. KAIFI's Proposed Technical Expert Dr. Girish Chowdhary ......................5

    C. The Present Dispute ....................................................................................7

III. LEGAL STANDARD.............................................................................................8

IV. ARGUMENT ........................................................................................................10

    A. Dr. Chowdhary Performs Both Competitive Decisionmaking and Scientific Research Relating To The Subject Matter Of The Patent Claims And Accused Products, And Thus Should Be Prevented From Accessing The Amazon Defendants' Confidential Materials ...................10

    B. The Additional Factors Favor A Protective Order Excluding Dr. Chowdhary From Receiving Defendants' Confidential Information .................13

V. CONCLUSION.....................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

Cases

*Chilly Dil Consulting, Inc. v. Jetpay ISO Servs., LLC*,
  No. 3:14-CV-2749-P-BK, 2015 WL 13118078 (N.D. Tex. Aug. 5, 2015) .............................. 12

*In re Deutsche Bank Trust Co. Americas,*
  605 F.3d 1373 (Fed. Cir. 2010) ............................................................................ 9, 10, 13, 14

*Intel Corp. v. VIA Techs., Inc.,*
  198 F.R.D. 525 (N.D. Cal. 2000) .......................................................................................... 8

*Layne Christensen Co. v. Purolite Co.*,
  271 F.R.D. 240 (D. Kan. 2010) ............................................................................................. 9

*Masakazu Ushijima v. Samsung Electronics Co., Ltd, & Samsung Electronics America, Inc.*,
  2014 WL 12160777 (W.D. Tex. Oct. 30, 2014) .................................................................. 10

*Nearstar, Inc v. Waggoner*,
  No. 4:09-CV-00218, 2009 WL 10677780 (E.D. Tex. Dec. 11, 2009) .................................... 8

*Phillips Petroleum Co. v. Rexene Prods. Co.*,
  158 F.R.D. 43 (D. Del. 1994) .............................................................................................. 10

*R.R. Donnelley & Sons Co. v. Quark, Inc.*,
  2007 WL 61885 (D. Del. 2007) ............................................................................................. 9

*ST Sales Tech Holdings, LLC. v. Daimler Chrysler Co.*, LLC,
  No. 6:07–CV–346, 2008 WL 5634214 n.5 (E.D. Tex. Mar.14, 2008) ............................. 8, 13

*Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*,
  236 F.R.D. 146 (W.D.N.Y. 2006) ........................................................................................ 12

*U.S. Steel Corp. v. United States*,
  730 F.2d 1465 (Fed. Cir. 1984) ............................................................................................. 9

*Voice Domain Techs., LLC v. Apple, Inc.*,
  No. CIV.A. 13-40138-TSH, 2014 WL 5106413 (D. Mass. Oct. 8, 2014) ............................ 14

Rules

Federal Rule of Civil Procedure 26(c) ......................................................................................... 8

**I.    INTRODUCTION**

This action is a patent infringement suit brought by KAIFI LLC ("Plaintiff" or "KAIFI") against three Amazon entities ("Defendants" or the "Amazon Defendants"). The accused products include, among others, mobile robotic drive units built and used by Amazon.com Services LLC ("ASL"). These robotic drive units use cameras and other sensors to determine their location and chart or adjust course. There are two types of drive units at issue: (1) guided drive units, in which the course is controlled by a server; and (2) the newer autonomous drive units, which control their own course. This ASL accused technology was developed over many years and represents a significant investment of resources. Much of the technology underlying these robotic drive units, including their source code, is confidential and contains trade secrets belonging to ASL.

KAIFI recently disclosed a proposed technical expert, Dr. Girish Chowdhary, as a person to whom KAIFI seeks to disclose Confidential, Restricted – Attorneys' Eyes Only, and Restricted Confidential Source Code information disclosed by the Amazon Defendants. The Amazon Defendants hereby object to, and seek a protective order against, any such disclosure.

Dr. Chowdhary wears many hats. In addition to serving as a professor at the University of Illinois Urbana-Champaign, Dr. Chowdhary is the co-founder and Chief Technology Officer (CTO) of EarthSense, a start-up company that, among other things, develops and markets proprietary autonomous mobile robots and their navigation systems. *See* Ex. 1 (Chowdhary Curriculum Vitae). Dr. Chowdhary actively develops and files patent applications and obtains patents on autonomous navigation systems for robots in connection with both EarthSense and his university work.

Due to his role as CTO of a robot/navigation system company, and because he is an active patent applicant in the same field as the ASL accused robotic drive units, Dr. Chowdhary fits

- 2 -

soundly within the parameters of a person who should not be given access to the Amazon Defendants' confidential and trade secret information. The risk that what Dr. Chowdhary would learn by reviewing the Amazon Defendants' produced documents would then bleed over into his own commercial and patenting activities is simply too high. Dr. Chowdhary cannot learn confidential, trade secret information about ASL's robotic drive units, then disregard that knowledge during his work as CTO of a robotics company, let alone during his work inventing and filing patent applications. Because permitting Dr. Chowdhary to learn Defendants' confidential information and trade secrets presents an unacceptable risk of misuse, Defendants bring this motion for a Protective Order to prevent Dr. Chowdhary from accessing their confidential information, including their source code.

## II.    BACKGROUND

### A.    The Amazon Technology At Issue

This lawsuit between KAIFI and the Amazon Defendants involves four asserted patents. One of those, U.S. Patent No. 7,689,001 (the "'001 Patent"), is primarily at issue in this motion.

The '001 Patent discloses a system that uses a camera that captures images of location tags to determine where a user is located. For example, in one embodiment, a mobile phone camera takes pictures of pre-placed location tags, assesses the distance between the camera and those tags, and uses that information to determine the user's location, as illustrated below:



Dkt. 1-4 ('001 Patent), Fig. 5.

      The '001 Patent is asserted against ASL's mobile robotic drive units, which are used in ASL's fulfillment center warehouses, primarily to move heavy objects such as inventory shelving units or carts laden with packages. Declaration of Anatoly Mitlin ("Mitlin Decl.") ¶ 3. For example, robotic drive units lift and carry shelving units to and from the stations where ASL employees work to stow or retrieve inventory. *Id*. The robotic drive units use cameras and other sensors in connection with their navigation and location-sensing systems. *Id*. ¶ 4. The following are images of some of the accused robotic drive units.



*See* Dkt. 1-9 ('001 Patent claim chart) at 4.



*Id.* at 3. These drive units are the result of years of investment, work, and intellectual property development. Mitlin Decl. ¶ 4. The drive units reflect trade secrets, including the source code used to control the drive units, operate the sensors, interpret information in real time, and precisely control the robotic drive unit's position and path. *Id.*

One particularly noteworthy system is a newer drive unit called "Proteus." Proteus is an autonomous mobile drive unit that uses machine learning and artificial intelligence to determine its location and path to destination without the intervention of an outside server. *Id.* ¶ 5. The Proteus system uses both camera image data and lidar sensors to aid in evaluating its position and for

obstacle avoidance. *Id*. The processes and source code underlying those systems reflect significant trade secrets that are protected by Defendants (and in particular, by Amazon Robotics, a division of ASL). *Id*.

The fields of mobile robotics, machine learning, artificial intelligence, and autonomy have been and continue to be active and emerging areas of technological development. *Id*. ¶ 7. Amazon Robotics invests significant resources to remain a leader in this important area. *Id*. For this reason, the unauthorized disclosure or use of the trade secrets underlying ASL's robotic drive units would be threatening to the business conducted by ASL. *Id*. ¶ 6. As just one example of this, if a company focused on developing autonomous robotic drive units were able to incorporate ASL's trade secrets and confidential information related to autonomous robotic drive units, and then sell its newly improved robotic drive units to another large retailer, that could cause ASL to lose the competitive edge that it derives from having a highly advanced mobile robotic fleet. *Id*.

### B.  KAIFI's Proposed Technical Expert Dr. Girish Chowdhary

From Dr. Chowdhary's robotics background, it is apparent that KAIFI will ask him to opine regarding KAIFI's allegations that ASL's robotic drive units infringe the '001 Patent. Dr. Chowdhary describes himself as follows:

> Currently, I am a professor of computer science and agricultural and bioengineering at the University of Illinois at Urbana-Champaign. I'm also a co-founder of a startup called EarthSense, which I started in 2016 with my very good friend Chinmay Soman. I am formally trained in robotics, and have done a lot of research in the industry. I have served as a consultant with other robotics companies in the past, and I have set myself on this path of trying to bring agricultural robotics to the public.

Ex. 2 (Q+A with Girish Chowdhary). Dr. Chowdhary describes his work as resting on three "pillars":

> The first pillar is engaging with students and research in the lab, publishing papers and graduating extremely talented people with PhDs. The second pillar is at EarthSense, creating robots with brand-new applications, building systems and

> constantly improving on execution. The final pillar is through innovation, where we take existing platforms and connect them to agriculture.

*Id*. at 3.

Dr. Chowdhary's second and third self-ascribed pillars form the primary basis of this Motion. His company, EarthSense, is directed at creating new robots and at "tak[ing] existing platforms and connect[ing] them to agriculture." *Id.* EarthSense's technology seeks to "give [ ] robots eyes using multiple cameras, and teach them how to get around" using artificial intelligence detection and data updating via machine learning. *Id*. at 2. With an EarthSense colleague, he has received multiple six-figure research grants for "TerraSentia," an "Ultracompact, Autonomous, Teachable Undercanopy Phenotyping Robot for PlantBreeders and CropScientists." Ex. 1 (CV) at 7. Photographs of some of Dr. Chowdhary's robots appear below:





Ex. 4 (as shown on EarthSense's website homepage). These robots use cameras, lidar and other sensors as navigation tools.

Creating such sensor-based robotic navigation systems appears to be a focus of Dr. Chowdhary's work at both the university and with EarthSense, including very recent work. For example, in 2023, Dr. Chowdhary co-authored an article regarding using camera data for an "[i]mage data-based autonomous navigation system." Ex. 4 (Calera, et al., *Under-Canopy*

*Navigation for an Agricultural Rover Based on Image Data*, J. of Intelligent and Robotic Systems (2023) 108:29). More recently, Dr. Chowdhary was co-author of an article that compared the use of camera-based navigation to lidar-based navigation. Ex. 5 (Gasparino et al., *WayFASTER: a Self-Supervised Traverability Predication for Increased Navigation Awareness* (March 9, 2024), *available at* https://arxiv.org/pdf/2402.00683). Notably, both of these articles concerned modifications to Dr. Chowdhary's EarthSense TerraSentia robots and include as co-authors current or former employees of EarthSense.

As a company, EarthSense has raised over $1 million in venture funding and has more than ten full-time employees. Ex. 1 (CV) at 26. One of Dr. Chowdhary's stated goals for EarthSense is to "generat[e] a market and industry around robotics." Ex. 2 at 5 (Q&A). Toward this goal, EarthSense is actively engaged in patenting new technology. In a recent press release, Dr. Chowdhary lauded that EarthSense had "five granted patents and more in progress" for field robots. Ex. 6 (EarthSense Press Release) at 3.

### C. The Present Dispute

KAIFI disclosed Dr. Chowdhary as an expert witness on March 31, 2025. Rayburn Decl. ¶ 15. Pursuant to the Protective Order, the Amazon Defendants then had ten days to notify KAIFI that they objected to the disclosure of their confidential/trade secret information to Dr. Chowdhary. Dkt. 42 ¶ 5(e). Defendants timely did so on April 9, 2025. Rayburn Decl. ¶ 16. The parties then met and conferred on April 11, 2025, and are now at an impasse. This motion is brought within 15 days of the April 9 notice, consistent with Paragraph 5(e) of the Protective Order and per agreement of the parties.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) empowers courts to issue protective orders "for good cause shown" to protect a party by, *inter alia*, "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Similarly, the Protective Order governing this case provides a procedure for objecting to the disclosure of confidential/trade secret information to a disclosed expert. Dkt. 43 ¶ 5(e). According to that procedure, "[t]he objecting Party shall have the burden of proving the need for a protective order." *Id.*

Courts employ a five-part test to evaluate whether it is appropriate to provide a particular person with access to confidential information: (1) whether the person receiving confidential information is involved in competitive decisionmaking or scientific research relating to the subject matter of the patent; (2) the risk of inadvertent disclosure of proprietary information; (3) the hardship imposed by the restriction; (4) the timing of the remedy; and (5) the scope of the remedy. *Nearstar, Inc v. Waggoner*, No. 4:09-CV-00218, 2009 WL 10677780, at *3 (E.D. Tex. Dec. 11, 2009). This same test applies to attorneys and non-attorneys alike. *See Nearstar*, 2009 WL 10677780, at *3-4 (applying test to non-attorneys); *Intel Corp. v. VIA Techs., Inc.,* 198 F.R.D. 525, 530 (N.D. Cal. 2000) (denying access to protected information to in-house counsel involved in competitive decisionmaking). While no factor is dispositive, the first factor—whether an individual is a competitive decisionmaker or is involved in relevant scientific research—usually receives the most focus. *ST Sales Tech Holdings, LLC. v. Daimler Chrysler Co.*, LLC, No. 6:07–CV–346, 2008 WL 5634214, at *3 n.5 (E.D. Tex. Mar.14, 2008). When an individual advises "'on company-wide business initiatives and opportunities for growth,' serving in a supervisory role in 'research and development and applications engineering and other strategic initiatives of [a

company]," that creates "the sort of disclosure risk that weighs heavily against granting access." *See R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 WL 61885, at *2 (D. Del. 2007) (precluding plaintiff's "President of Corporate Strategic Initiatives" from accessing defendant's confidential materials).

When two companies are competitors in a specific field, there is an obvious danger that one may use confidential information to the other's disadvantage. The logic is simple and intuitive: "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 1378 (Fed. Cir. 2010). Competitive decisionmaking is often described as a person's "activities, association, and relationship with a [company] that are such as to involve ... advice and participation in any or all ... decisions (pricing, product, design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984). Accordingly, Courts are attuned to the need to prevent experts employed by competitors from accessing confidential information. *See, e.g.*, *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 252 (D. Kan. 2010) (prohibiting disclosure of Attorneys-Eyes Only materials to "any expert or consultant who consults or is employed with" companies identified by defendant as competitors).

Applying for a patent is a type of competitive decisionmaking that can give rise to a Protective Order. For example, in *Masakazu Ushijima v. Samsung Electronics Co., Ltd, & Samsung Electronics America, Inc.*, Defendants successfully prohibited plaintiff's proposed expert from accessing confidential documents because he "assert[ed] and license[d] Plaintiff's patents," work that included "devis[ing] licensing strategies, lead[ing] patent infringement negotiations, develop[ing] infringement impact models and assess[ing] licensing terms offered by target

companies." No. A-12-CV-318 LY, 2014 WL 12160777, at *2 (W.D. Tex. Oct. 30, 2014). Similarly here, Dr. Chowdhary's work as CTO involves developing corporate strategies, devising patent applications, and, potentially, identifying potential infringement cases.

## IV.   ARGUMENT

### A.   Dr. Chowdhary Performs Both Competitive Decisionmaking and Scientific Research Relating To The Subject Matter Of The Patent Claims And Accused Products, And Thus Should Be Prevented From Accessing The Amazon Defendants' Confidential Materials.

As noted above, this case concerns infringement allegations against the navigation and localization systems used in ASL robotic drive units, including ASL's autonomous robotic drive unit, Proteus. *See* Dkt. 1-9 ('001 Patent claim chart). KAIFI's allegations are specifically directed at certain cameras and other sensors (such as lidar) that Amazon robotic drive units use as part of their navigation systems. *Id*. at 8, 16-17. KAIFI's allegations also implicate the control systems of the ASL robotic drive units. *Id*. at 26.

There can be no dispute that Dr. Chowdhary's company, EarthSense, operates in the same technical area as that of the ASL robotic drive units: mobile robot navigation systems. The EarthSense web page claims that its products are based on "Robust field-proven autonomous navigation algorithms." Ex. 3 (www.earthsense.co). And Dr. Chowdhary is not just an employee of EarthSense; he is the co-founder and Chief Technical Officer. As CTO, he is involved, at the very least, in product design and pricing, two activities indicative of competitive decisionmaking. *See Deutsche Bank*, 605 F.3d at 1378–79. His work as both professor and CTO also necessarily involves scientific research in the relevant field. *See Phillips Petroleum Co. v. Rexene Prods. Co.*, 158 F.R.D. 43 (D. Del. 1994) (denying defendant's motion to provide CEO confidential information because of his decisionmaking authority and scientific involvement). To be clear, Dr. Chowdhary's CTO title is not just an honorary position. Dr. Chowdhary is active in the company,

providing quotes for or authoring corporate press releases, *see* Exs. 6, 7, 8, and discussing his work with the company in public interviews, *see* Ex. 2 (Q&A).

Dr. Chowdhary's status as a patent applicant also renders him a competitive decisionmaker and shows that he is involved in scientific research in the relevant field. Dr. Chowdhary holds at least 28 patents, and has many more published patent applications, at least three of which use variations of "autonomous" and "robot" in their titles. *See* Ex. 9 (US-12001221-B2); Ex. 10 (US-20240176348-A1); Ex. 11 (US-20220317702-A1). He may also have additional patents, or patents-in-progress, that are not yet publicly available. Many of Dr. Chowdhary's patents are assigned to EarthSense, including: (1) U.S. Patent No. 11,829,155, which is entitled "System and method for navigating under-canopy robots using multi-sensor fusion" (issued November 2023) (Ex. 12); and (2) U.S. Patent App. Pub. No. US-20240176348, which is entitled "System and method for autonomous navigation of a field robot" (Ex. 10).

Dr. Chowdhary's competitive activities and scientific research are directly relevant to the accused products and issues in this case. Both ASL and Dr. Chowdhary's company EarthSense are in the business of making small mobile robots for industrial use, with a goal of developing the autonomous features of such robots. ASL uses camera data and lidar sensors to help its robots navigate. Mitlin Decl. ¶¶ 4-5. Similarly, Dr. Chowdhary develops robot navigation systems using the same types of camera data and lidar sensors. Ex. 4 (*Under-Canopy Navigation* article); Ex. 5 (*WayFASTER* article). And he seeks to patent this technology, as noted above. Defendants do not challenge Dr. Chowdhary's intentions or integrity.[1] But there can be no serious argument that Dr.

---

[1] In fact, Defendants have hired at least three of Dr. Chowdhary's current or former grad students as interns or junior engineers, including at least one former EarthSense employee. Declaration of Christina V. Rayburn ("Rayburn Decl.") ¶ 17. The fact that Amazon and Dr. Chowdhary have employed the same type of individuals only reemphasizes that they operate in similar fields.

Chowdhary is not involved in competitive decisionmaking or relevant scientific research. As such, his position makes inadvertent misuse of the Amazon Defendants' confidential technical information a serious risk. *See Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 236 F.R.D. 146, 149 (W.D.N.Y. 2006) ("[I]t seems unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests."); *see also* Mitkin Decl. ¶ 6.[2]

Defendants do not expect KAIFI to contest that Dr. Chowdhary is a competitive decisionmaker for EarthSense. Rather, KAIFI may argue that his role as EarthSense's CTO is irrelevant because: (1) ASL does not currently sell its robotic drive units; (2) EarthSense focuses on agricultural applications whereas ASL's robotic drive units are used in warehouses; or (3) Dr. Chowdhary is primarily a university professor. Any such distinctions would go against how Dr. Chowdhary describes his own work. As noted above relative to Dr. Chowdhary's three "pillars," he sees his work with the university and EarthSense as supporting his overall innovation goals. Ex. 2 (Q+A). As CTO of a company dedicated to "creating robots with brand new applications" (his second "pillar"), Dr. Chowdhary is a competitive decisionmaker, particularly as to the products at issue in the case (here mobile robotic drive units and navigation systems). *Id.* at 4. And regardless of whether ASL sells the accused robots, if information about them is misused, even inadvertently, it risks significant competitive damage. *See* Mitlin Decl. ¶ 6. But even more problematic is Dr. Chowdhary's "final pillar," which he describes as "tak[ing] existing platforms

---

[2] Granting this Motion would not bar Dr. Chowdhary from being an expert witness for KAIFI. For example, he could still opine on non-confidential validity issues (provided he is qualified). He "simply cannot review select documents" that are marked confidential, materials which would be competitively harmful to Defendants if disclosed. *Chilly Dil Consulting, Inc. v. Jetpay ISO Servs., LLC*, No. 3:14-CV-2749-P-BK, 2015 WL 13118078, at *2 (N.D. Tex. Aug. 5, 2015).

and connect[ing] them to agriculture." *Id.* Someone who sees their purpose as adapting "existing platforms" to a new field is simply not someone who should be receiving the confidential or trade secrets information of others, however laudable his purposes might otherwise be.

KAIFI may also argue that Dr. Chowdhary is not involved in day-to-day prosecution of his patents. However, "[r]egardless whether [patent filers] are involved in day-to-day prosecution, by filing new patent applications, they 'control the content of patent applications and the direction and scope of protection sought in those applications.'" *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1294 (D.N.M. 2015) (quoting *Deutsche Bank*, 605 F.3d at 1380). Dr. Chowdhary is directly involved in crafting the content, direction, and scope of EarthSense's patent applications in the field of mobile robot navigation systems, and is thus not a person who should be given access to the Amazon Defendants' confidential and trade secret information in that same field.

For the foregoing reasons, the first *Nearstar* factor makes clear that this Motion for Protective Order should be granted.

### B. The Additional Factors Favor A Protective Order Excluding Dr. Chowdhary From Receiving Defendants' Confidential Information.

Courts have recognized that if an individual is a "competitive decisionmaker," then "most all of the policy concerns underlying the rule allowing courts to deny [individuals] access to confidential information typically are present." *ST Sales Tech Holdings, LLC. v. Daimler Chrysler Co.*, LLC, No. 6:07–CV–346, 2008 WL 5634214, at *3 n.5 (E.D. Tex. Mar.14, 2008). As set forth above, Dr. Chowdhary is a "competitive decisionmaker." In addition, the remaining *Nearstar* factors also support barring Dr. Chowdhary from receiving the Amazon Defendants' confidential information.

*Factor 2: The risk of inadvertent disclosure of proprietary information.* Autonomous robotic technology is emerging and therefore especially competitive. *See* Mitlin Decl. ¶ 7. Accordingly, there is an elevated risk of inadvertent disclosure of confidential materials. *See Deutsche Bank*, 605 F.3d at 1380–81 (Fed. Cir. 2010) ("[I]nformation related to new inventions and technology under development, especially those that are not already the subject of pending patent applications, may pose a heightened risk of inadvertent disclosure by counsel involved in prosecution-related competitive decisionmaking"). KAIFI presumably wants Dr. Chowdhary to engage in a thorough and exhaustive analysis of Defendants' technology, including the source code that KAIFI has requested. It will be impossible for Dr. Chowdhary to put this information out of his mind as he makes decisions for EarthSense about product design, where to invest resources, or as he participates in research and planning for future patents.

*Factors 3 & 4: The hardship imposed by the restriction / The timing of the remedy.* Limiting Dr. Chowdhary's access to Defendant's confidential materials poses little hardship or prejudice to KAIFI's ability to pursue its claims. Dr. Chowdhary is but one potential expert that KAIFI has identified, and it is still early in the case. KAIFI's counsel has access to the Amazon Defendants' produced documents, and KAIFI has ample time to identify a new expert. *See Voice Domain Techs., LLC v. Apple, Inc.*, No. CIV.A. 13-40138-TSH, 2014 WL 5106413 (D. Mass. Oct. 8, 2014) (counsel's access to documents and a party's ability to find a new expert are relevant for balancing harms). This is not a small and highly specialized industry with few experts. Dr. Chowdhary is one among many experts who can testify regarding the use of cameras and markers to determine location.[3] He is not so uniquely positioned that no one else can offer a qualified opinion. There are

---

[3] Although the accused products and Dr. Chowdhary's work focus on robotic drive units, the focus of the '001 Patent is a software-implemented algorithm that is not tied to a robot.

dozens of qualified professors, independent researchers, and professional experts who are not the CTO of a company developing autonomous mobile robots and who are not actively prosecuting competitive patents. Dr. Chowdhary would also remain available to serve as an expert relative to questions that do not involve reviewing Defendants' confidential information.

*Factor 5: The scope of remedy.* Lastly, the scope of the remedy (preventing Dr. Chowdhary from accessing Defendants' confidential materials) is appropriate here. This is an archetypal case of competitive decisionmaking: KAIFI is attempting to use an expert whose commercial and patent work is directly competitive with Defendants'. Allowing Dr. Chowdhary to access Defendants' confidential materials, or to prosecute patents in the same subject area, would be tremendously damaging. *See, e.g.*, Mitkin Decl. ¶ 6. Dr. Chowdhary is still able to serve as an expert, just without access to Defendants' competitively sensitive materials.

Thus, based on all the factors, Dr. Chowdhary should be barred from accessing Defendants' confidential information in this case.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter a Protective Order preventing Dr. Chowdhary from accessing Defendants' confidential information produced in this case. In the alternative, should the Court determine that the Defendants have not met their burden on this Motion, Defendants respectfully request leave to depose Dr. Chowdhary to gather additional information relating to his competitive decisionmaking and scientific research in the relevant field.

Dated: April 24, 2025					HUESTON HENNIGAN LLP


							By:	*/s/ Christina V. Rayburn*
								Christina V. Rayburn (lead counsel)
								Neil G. Anderson
								Thomas B. King
								Karen L. Younkins
								Christine Woodin
								HUESTON HENNIGAN LLP
								620 Newport Center Drive, Ste. 1300
								Newport Beach, California 92660
								Telephone: 949-287-5940
								Facsimile: 888-866-4825
								crayburn@hueston.com
								nanderson@hueston.com
								tking@hueston.com
								kyounkins@hueston.com
								cwoodin@hueston.com

								Deron R. Dacus
								The Dacus Law Firm PC
								ddacus@dacusfirm.com
								821 ESE Loop 323
								Tyler, TX 75701
								Telephone: 903-705-1117
								Facsimile: 903-581-2543

								*Attorneys for Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Web Services, Inc.*

- 16 -

6978085

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via electronic mail on April 24, 2025 to all opposing counsel of record.

By: /s/ Christina V. Rayburn
Christina V. Rayburn

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties met and conferred to discuss this motion and other open disputes on April 11, 2025 as required by Local Rule CV-7(h) and the motion is opposed. The participants to that conference were Christy Rayburn and Thomas King (for Defendants), and Daniel Schwartz and Jennifer Hayes (for Plaintiffs). No agreement could be reached as to the appropriateness of sharing Amazons' confidential information with Dr. Chowdhary. These discussions ended conclusively in an impasse and left an open question for the Court to resolve.

By: /s/ Christina V. Rayburn
Christina V. Rayburn